**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

CHAMBERS OF
J. Mark Coulson
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

August 30, 2021

LETTER TO COUNSEL

      RE:    *Kifer v. Saul, Commissioner, Social Security Administration*
              Civil No. 1:20-cv-00294-JMC

Dear Counsel:

      On February 3, 2020, Plaintiff Kifer petitioned this Court to review the Social Security Administration's ("SSA") final decision to deny her claims for Period of Disability, Disability Insurance Benefits, and Supplemental Security Income. (ECF No. 1). I have considered the parties' cross-motions for Summary Judgment and Plaintiff's Response. (ECF Nos. 14, 15, & 16). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. § 405(g); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will deny Plaintiff's motion and grant in part and deny in part Defendant's motion. This letter explains my rationale.

      Plaintiff filed her claim for period of disability and disability insurance benefits on November 20, 2015. (Tr. 15). Plaintiff also filed a claim for supplemental security income benefits on May 12, 2016. *Id.* In both claims, Plaintiff alleged an onset date of May 23, 2014. *Id.* Plaintiff's claims were denied initially on August 22, 2016 and again on reconsideration on January 30, 2017. (Tr. 144–45; 192–93). A hearing was held on August 27, 2018, before Administrative Law Judge Brian B. Rippel ("ALJ"). (Tr. 42–78). Following the hearing, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time frame. (Tr. 32). The Appeals Council declined review (Tr. 3–5), and consequently the ALJ's decision constitutes the final, reviewable decision of the SSA.

      In arriving at the decision to deny Plaintiff's claim, the ALJ followed the five-step sequential evaluation of disability set forth in the Secretary's regulations. 20 C.F.R. § 416.920. "To summarize, the ALJ asks at step one whether the claimant has been working; at step two, whether the claimant's medical impairments meet the regulations' severity and duration requirements; at step three, whether the medical impairments meet or equal an impairment listed in the regulations; at step four, whether the claimant can perform her past work given the limitations caused by her medical impairments; and at step five, whether the claimant can perform other work." *Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015). If the first three steps do not yield a conclusive determination, the ALJ then assesses the claimant's RFC, "which is 'the most' the claimant 'can still do despite' physical and mental limitations that affect her ability to work," by considering all of the claimant's medically determinable impairments regardless of severity. *Id.* at 635 (quoting 20 C.F.R. § 416.945(a)(1)). The claimant bears the burden of proof

1

through the first four steps of the sequential evaluation. If the claimant makes the requisite showing, the burden shifts to the SSA at step five to prove "that the claimant can perform other work that 'exists in significant numbers in the national economy,' considering the claimant's residual functional capacity, age, education, and work experience." *Lewis v. Berryhill*, 858 F.3d 858, 862 (4th Cir. 2017) (internal citations omitted).

In the instant case, the ALJ found that Plaintiff had "not engaged in substantial gainful activity since May 23, 2014, the alleged onset date." (Tr. 17). The ALJ further found that during the relevant time frame, Plaintiff suffered from the severe impairments of "degenerative disc disease with facet arthropathy and lumbar radiculopathy, myofascial pain syndrome, chronic pain disorder, occipital neuralgia, migraines, cardiac dysrhythmia, obesity, asthma, affective disorder, adjustment disorder, anxiety disorder, and depression." (Tr. 18). Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> [P]erform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with lifting/carrying up to 20 pounds occasionally and 10 pounds frequently: standing/walking up to 6 hours and sitting up to 6 hours in an 8-hour workday; with additional limitations to include only occasional climbing ramps and stairs, balancing, stooping, kneeling, crouching, crawling: no climbing ladders/ropes/scaffolds: only occasional exposure to cold and heat extremes, wetness, humidity, vibration, respiratory irritants (such as fumes, odors, dust, gases, poorly ventilated areas), and workplace hazards (including unprotected heights and hazardous machinery): limited to only occasional overhead reaching with the bilateral upper extremities: limited to simple, routine tasks, in entry level unskilled work; with routing, customary breaks after about 2-hour periods of work; in a low-stress job (defined as involving only occasional independent decision making and occasional changes in the work setting): and requiring only occasional interaction with the public, co-workers, and supervisors.

(Tr. 21–22).

The ALJ determined that Plaintiff was unable to perform any past relevant work. (Tr. 30). However, after considering the testimony of a vocational expert ("VE"), the ALJ determined that Plaintiff could perform other jobs existing in significant numbers in the national economy. (Tr. 31). Therefore, the ALJ concluded that Plaintiff was not disabled during the relevant time frame. (Tr. 32).

The Court reviews an ALJ's decision to ensure that the ALJ's findings are supported by substantial evidence and were reached through application of correct legal standards. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," which "consists of more than a mere scintilla of evidence but may be less than a preponderance." *Id.* In accordance with this standard, the Court does not "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Instead, "[w]here conflicting evidence allows reasonable minds to differ

as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." *Id.*

On appeal, Plaintiff argues that: (1) the ALJ's holding runs afoul of the Fourth Circuit's decision in *Mascio*, 780 F.3d 632, for the ALJ's determination the Plaintiff suffered a "moderate limitation" in maintaining concentration, persistence, or pace, and failure to include a corresponding limitation in the RFC determination, or explanation as to why such a limitation is not necessary; and (2) the ALJ erred by failing to properly evaluate whether Plaintiff's impairments met or equaled Listing 1.04A, rendering the decision unsupported by substantial evidence. (ECF No. 14-2 at 12, 18). I agree, in part, and find that the ALJ's opinion is not supported by substantial evidence. Therefore, I will deny Plaintiff's Motion for Summary Judgment, (ECF No. 14), and grant in part and deny in part Defendant's Motion for Summary Judgment. (ECF No. 15).

## ANALYSIS

### I. Listing 1.04A

Plaintiff argues that the ALJ's step two determination—that Plaintiff has the severe impairment of degenerative disc disease with facet arthropathy and lumbar radiculopathy— conflicts with the ALJ's step three conclusion that Plaintiff did "not have compromise of a nerve root or spinal cord with evidence of nerve root compression." (ECF No. 14-2 at 22–23). Put another way, Plaintiff contends that the ALJ's conclusion that she did not meet Listing 1.04 is "directly impeached by the ALJ's step-two determination, wherein [the ALJ] explicitly found 'lumbar radiculopathy,' i.e., nerve root compression to be a medically determinable, severe impairment." (ECF No. 16 at 7). Therefore, Plaintiff asserts the ALJ's conclusion is not supported by substantial evidence, which precludes meaningful review by this Court. *Id.*

Defendant responds that Plaintiff failed to meet "her burden of demonstrating that she met or medically equaled" Listing 1.04. (ECF No. 15-1 at 11). In support, Defendant argues that the ALJ discussed Plaintiff's pertinent MRI records and other examination findings, which indicated that the Listing 1.04A criteria were not met. *Id.* at 7. Moreover, Defendant relies on *Crowl v. Colvin*, for the proposition that "radiculopathy '*is legally insufficient* to meet or equal Listing 1.04A.'" *Id.* at 9 (emphasis by Plaintiff) (quoting *Crowl v. Colvin*, Civ. No. BPG-15-446, 2016 WL 245555, at *2 (D. Md. Jul. 6, 2015)).

The Listings of Impairments "describe[] for each of the major body systems impairments that [the SSA] consider[s] to be severe enough to prevent an individual from doing any gainful activity. . . ." 20 C.F.R. § 404.1525(a). At step three of the five-step sequential evaluation, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 18). To meet Listing 1.04, a claimant must have a disorder of the spine, resulting in compromise of a nerve root, with either: (A) evidence of nerve root compression;[1] (B) spinal arachnoiditis; or (C) lumbar spinal

---

[1] In full, Subsection 1.04A requires "evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." 20 C.F.R. Part 404, Subpart P, App. 1, § 1.04A.

stenosis. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04. Each subsection also delineates symptoms for establishing the severity requirement. *Id.*

In *Radford v. Colvin*, the Fourth Circuit rejected the contention of the SSA that Listing 1.04A necessitated that the requisite symptoms be present simultaneously or in close proximity:

> Listing 1.04A requires a claimant to show only . . . that each of the symptoms are present, and that the claimant has suffered or can be expected to suffer from nerve root compression continuously for at least 12 months. 20 C.F.R. § 404.1509. A claimant need not show that each symptom was present at precisely the same time—i.e., simultaneously—in order to establish the chronic nature of his condition. Nor need a claimant show that the symptoms were present in the claimant in particularly close proximity.

734 F.3d 288, 294 (4th Cir. 2013). In response to *Radford*, the SSA issued Acquiescence Ruling ("AR") 15-1(4),[2] which sets forth a two-step test for the application of Listing 1.04A and is applicable to states within this Circuit. *See Beck v. Saul*, 2019 WL 3423649, at *5 (E.D.N.C. July 3, 2019), *report and recommendation adopted*, 2019 WL 3423424 (E.D.N.C. July 26, 2019). This application is as follows:

> Adjudicators will decide whether the evidence shows that all of the medical criteria in paragraph A are present within a continuous 12-month period (or, if there is less than 12 months of evidence in the record, that all the medical criteria are present and are expected to continue to be present). If all of the medical criteria are not present within a continuous 12-month period, adjudicators will determine that the disorder of the spine did not meet the listing.
>
> If all of the medical criteria in paragraph A are present within a continuous 12-month period (or are expected to be present), adjudicators will then determine whether the evidence shows—as a whole—that the claimant's disorder of the spine caused, or is expected to cause, nerve root compression continuously for at least 12 months. In considering the severity of the nerve root compression, the medical criteria in paragraph A need not all be present simultaneously, nor in particularly close proximity. The nerve root compression must be severe enough, however, that the adjudicator can fairly conclude that it is still characterized by all of the medical criteria in paragraph A.

AR 15-1(4), 80 Fed. Reg. at 57420, 2015 WL 5564523.

In the instant case, the ALJ's written decision explicitly addressed Listing 1.04. (Tr. 18–19). With regard to that listing specifically, the ALJ provided:

---

[2] "When [the SSA] determine[s] that a United States Court of Appeals holding conflicts with [the SSA's] interpretation of a provision of the Social Security Act or regulations and the Government does not seek further judicial review or is unsuccessful on further review, [the SSA] will issue a Social Security Acquiescence Ruling." 20 C.F.R. § 404.985.

> The undersigned has considered a listing of 1.04 for the claimant's degenerative disc disease with facet arthropathy and lumbar radiculopathy. Although an MRI of the lumbar spine in October 2015 showed a L5-S1 small paracentral disc protrusion appearing slightly more prominent and more focal compared to prior exams deforming the adjacent anterior aspect of the thecal sac and displacing the right S1 nerve root posteriorly, (Ex. B31F/1-2), an MRI of the lumbar spine in April 2017 showed no central spinal canal stenosis nor neuroforaminal narrowing, and a small central rightward focal disc protrusion at L5-S1 (Ex. B51F/2-3). The claimant does not have compromise of a nerve root or spinal cord with evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis resulting in pseudo-claudication. Therefore, the criteria for [Listing 1.04] has not been met.

*Id.*

The Court concludes that the inherent contradiction between the ALJ's step two determination that Plaintiff suffers from the severe impairment of degenerative disc disease with facet arthropathy and lumbar radiculopathy, and the ALJ's assertion at step three that Plaintiff "does not have compromise of a nerve root or spinal cord with evidence of nerve root compression" warrants remand. This Court's recent decision in *Jeanette D. v. Saul*, is particularly persuasive. Civ. No. CBD-18-2664, 2020 WL 1043264 (D. Md. Mar. 3, 2020). The issue presented in *Jeanette D.* is materially indistinguishable from the instant case. There, the ALJ similarly determined at step two that the claimant suffered from lumbar radiculopathy, but at step three concluded the claimant did not demonstrate nerve root compression as required to meet Listing 1.04A. On judicial review, this Court concluded that "[t]he ALJ erred because in step two, she concluded that [the claimant] suffer[ed] from the severe impairments of cervical and lumbar radiculopathy, but then contradicted herself in step three by concluding there was no evidence of nerve root compression." *Id.* at *5. Therefore, remand was appropriate. *Id.* at *7.

In reaching this conclusion in *Jeanette D.*, the Court relied on both medical and non-medical sources, and cases of this Court to define radiculopathy as:

> Irritation of or injury to a nerve root (as from being compressed) that typically causes pain, numbness, or weakness in the part of the body which is supplied with nerves from that root. *Taylor* [*v. Colvin*, Civ. No. ADC-15-2204], 2016 WL 3190637, at *7, n.2 (D. Md. June 6, 2016) (citing *Radiculopathy*, Merriam-Webster Collegiate Dictionary, (11th ed. 2003)); *see also Walker v. Colvin*, No. CBD-15-2293, 2016 WL 8669936, at *4 (D. Md. July 15, 2016) (stating that radiculopathy is defined as compression of the nerve root) (citing *Radiculopathy*, Gale Encyclopedia of Medicine (2008)). "[R]adiculopathy is a disease of the nerve roots" and "[n]erve root compression is a form of radiculopathy." *See Hays* [*v. Sullivan*], 907 F.2d [1453,] 1457 nn.4–5 [(4th Cir. 1990)]; *Helene C. v. Comm'r Soc. Sec. Admin.*, No. DLB-18-2938, 2019 WL 7370353, at *3 (D. Md. Dec. 31, 2019) (citing *Walker*, 2016 WL 8669936, at *4); *Jeffery L.B. v. Berryhill*, No. TMD-17-2393, 2019 WL 556842, at *4 (D. Md. Feb. 2, 2019); *Edna Faye H. v. Saul*, No. TMD-18-581, 2019 WL 4643797, at *5 (D. Md. Sept. 24, 2019).

5

*Id.* at *5 (internal quotation marks omitted). Other circuits to address this issue have also defined radiculopathy as synonymous with nerve root compression. *See id.* at *5 (collecting cases). Given the above, the Court concludes in this case that the ALJ erred by finding a severe impairment of degenerative disc disease with lumbar radiculopathy before concluding that Plaintiff did not make a showing of nerve root compression as required by Listing 1.04A. Thus, remand is similarly appropriate.

For completeness, it is worth noting that other decisions within this District have concluded that radiculopathy is *not* synonymous with nerve root compression. *See, e.g.*, *Crowl v. Colvin*, Civ. No. BPG-15-446, 2016 WL 245555, at *2 (D. Md. Jan. 20, 2016) ("Though plaintiff has presented some evidence of radiculopathy, this condition is legally insufficient to meet or equal Listing 1.04A."); *Smick v. Comm'r., Soc. Sec.*, Civ. No. GLR-14-2955, 2015 WL 4092449, at *2 (D. Md. July 6. 2015). This Court is unpersuaded by those decisions in large part because the ALJs there did not make step two determinations that the respective claimants suffered lumbar radiculopathy. *Crowl*, 2016 WL 245555, at *1; *Smick*, 2015 WL 4092449, at *1. Thus, in those cases, the decisions of the ALJs did not reflect such patent contradiction as that present in *Jeanette D.*, and in this case.

## II.  **Plaintiff's "Moderate Limitation" Maintaining Concentration, Persistence, or Pace**

Plaintiff additionally argues that, violative of *Mascio*, the ALJ failed to include a limitation in Plaintiff's RFC determination, or explain why no such limitation was necessary, once the ALJ found that Plaintiff suffered moderate limitations with maintaining concentration, persistence or pace. (ECF No. 14-2 at 12). Defendant counters that the ALJ's decision is supported by substantial evidence and explains why the RFC adequately accounts for Plaintiff's impairments and limitations. (ECF No. 15-1 at 16–18). Defendants principally rely on the Fourth Circuit's decision in *Shinaberry v. Saul*, 952 F.3d 113 (4th Cir. 2020) and assert that the ALJ's explanatory discussion in support of the RFC determination is sufficient to avoid remand. *Id.*

In *Mascio*, the United States Court of Appeals for the Fourth Circuit determined that remand was appropriate for three distinct reasons, including, as pertinent to this case, the inadequacy of the ALJ's evaluation of "moderate difficulties" in concentration, persistence, or pace. 780 F.3d at 637–38. At step three of the sequential evaluation, the SSA determines whether a claimant's impairments meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (2018). Listings 12.00 *et seq.* pertain to mental impairments. *Id.* at § 12.00 (2018). The relevant listings therein consist of: (1) "paragraph A criteria," which consist of a set of medical findings; (2) "paragraph B criteria," which consist of a set of impairment-related functional limitations; and (3) "paragraph C criteria," which relate to "serious and persistent" disorders lasting at least two years with a history of ongoing medical treatment and marginal adjustment. *Id.* § 12.00(A), (G). A claimant's impairments meet the listings relevant by satisfying either the paragraph A and paragraph B criteria, or the paragraph A and paragraph C criteria. *Id.* § 12.00(A).

Paragraph B consists of four broad functional areas including: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting,

or maintaining pace, and (4) adapting or managing oneself. *Id.* § 12.00(A)(2)(b). The functional area of concentration, persistence, or pace "refers to the abilit[y] to focus attention on work activities and stay on task at a sustained rate." *Id.* § 12.00(E)(3).

The SSA employs a "special technique" to rate a claimant's degree of limitation in each functional area, based on the extent to which the claimant's impairment "interferes with [the claimant's] ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. §§ 404.1520a(b), (c)(2), 416.920a(b), (c)(2). The SSA uses a five-point scale to rate a claimant's degree of limitation in the four areas: none, mild, moderate, marked, or extreme. *Id.* §§ 404.1520a(c)(4), 416.920a(c)(4). A moderate limitation signifies that the claimant has only a fair ability to function in the relevant area of mental functioning. 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.00(F)(2)(c) (2018).

Remand was appropriate in *Mascio* where the ALJ "ignor[ed] (without explanation) Mascio's moderate limitation in her ability to maintain her concentration, persistence, or pace" in the function-by-function analysis, and "said nothing about [the claimant's] mental limitations" in the hypothetical posed to the vocational expert. *Id.* at 633; 637–38. *Mascio* aligned the Fourth Circuit with other Courts of Appeals in concluding that an ALJ does not "account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine or unskilled work,'" because "the ability to perform simple tasks differs from the ability to stay on task." 780 F.3d at 638. Yet, despite the foregoing, an "ALJ can explain why [a claimant's] moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation" in the claimant's RFC. *Id.* "For example, the ALJ may find that the concentration, persistence, or pace limitation does not affect [the claimant's] ability to work, in which case it would [be] appropriate to exclude it from the hypothetical tendered to the vocational expert." *Id.*

Mindful of *Mascio* and its directives, this Court finds the Fourth Circuit's application of *Mascio* in *Shinaberry* applicable here. *Shinaberry* instructs that *Mascio* was not intended to impose a "per se rule":

> "[W]hen medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011). Hypothetical questions can also "adequately account for a claimant's limitations in concentration, persistence, and pace when the questions otherwise implicitly account for these limitations." *Id.* "The inquiry, as is usually true in determining the substantiality of evidence, is case-by-case." *Biestek* [*v. Berryhill*], 139 S. Ct. [1148,] 1157 [(2019)]; *see also Sizemore v. Berryhill*, 878 F.3d 72, 80-81 (4th Cir. 2017) (rejecting argument that remand was required under *Mascio* because the ALJ failed to specifically account for claimant's moderate difficulties with regard to concentration, persistence and pace, because more detailed medical findings provided substantial support for the RFC limitations).

7

952 F.3d at 121. Applying this in *Shinaberry*, the Fourth Circuit determined that the ALJ adequately "addressed Shinaberry's borderline intellectual disability, including her moderate limitations in concentration, persistence, or pace," and explained why the psychological evidence and the claimant's statements supported "a mental limitation to simple, routine, and repetitive tasks." 952 F.3d at 122.

Here, the ALJ discussed Plaintiff's psychological evaluations conducted by the State Disability Determination Service ("DDS") and Plaintiff's own therapist, and explained why the RFC limitation to simple, routine, and repetitive tasks accounted for Plaintiff's moderate limitations in concentration, persistence and pace:

> The DDS psychologists opined that the claimant is able to understanding [sic] and follow simple directions on a sustained basis, is able to sustain attention, concentration, and persistence, is able to interact with the general public, supervisors, and peers on an occasional basis, and is able to adapt to routine changes in the work environment . . . . The DDS consultant[s'] . . . reconsideration mental limitations are given great weight, as they are balanced, objective, and supported by the objective medical record, including findings during neurological examinations . . . and findings during mental status examination and the psychiatric portion of physical examinations . . . .
>
> \* \* \*
>
> [Plaintiff's therapist,] Amy Rowels-Shipley LCPC submitted a mental residual functional capacity assessment form in March 2018. Ms. Rowels-Shipley opined that . . . an extreme limitation is deficiencies [sic] of concentration, persistence, or pace resulting in failure to complete tasks in a timely manner, and three episodes of decomposition in work or work-like setting . . . . This opinion is given little weight. Ms. Rowels-Shipley's opinion seems based more on the subjective reports of the claimant, and is not consistent with the objective medical record, including minimal findings during mental status examination and the psychiatric portion of physical examinations . . . and minimal treatment including counseling . . . and medications . . . .
>
> \* \* \*
>
> [William] Canter [Ph.D.] opined that the claimant's . . . sustained concentration and persistence are marginal . . . . This opinion is given partial weight. Although the claimant reportedly had poor short-term memory during counseling sessions . . . she has otherwise been alert and oriented, with normal neurological . . . and psychiatric findings . . . .

(Tr. 28–29).

In this case, unlike *Mascio*, the ALJ adequately explained how Plaintiff's moderate limitations in concentration, persistence, and pace were accommodated in the RFC determination.

The ALJ limited Plaintiff's work "to simple, routine tasks, in entry level unskilled work" with additional restrictions concerning breaks, stress, and interaction with others. (Tr. 21). This limitation is supported by the DDS psychologists' evaluations—notably that Plaintiff is able to "follow simple directions on a sustained basis, is able to sustain attention, concentration, and persistence"—which the ALJ explained he gave great weight because they were "balanced, objective, and supported by the objective medical record, including findings during neurological examinations . . . and findings during mental status examination and the psychiatric portion of physical examinations." (Tr. 28). Accordingly, the Court concludes that the ALJ's RFC determination is supported by substantial evidence and is compliant with *Mascio*. *See Shinaberry*, 952 F.3 at 121–22; *see also Jolanda J. v. Saul*, Civ. No. TJS-18-3769, 2020 WL 1060452, at *3 (D. Md. Mar. 5 2020) (concluding that ALJ satisfactorily explained how claimants moderate limitation in concentration, persistence, and pace were accommodated by the ALJ's RFC determination limiting the claimant to "simple 1-4 step, routine repetitive tasks").

For the reasons set forth herein, Plaintiff's Motion for Summary Judgment (ECF No. 14), is DENIED and Defendant's Motion for Summary Judgment (ECF No. 18) is DENIED in part. Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is REVERSED in part due to inadequate analysis. The case is REMANDED for further proceedings in accordance with this opinion. The Clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it is an Order of the Court and the Clerk is directed to docket it as such.

Sincerely yours,

_____/s/_____

J. Mark Coulson
United States Magistrate Judge